# *IN THE DISTRICT COURT OF THE UNITED STATES*

## *for the Western District of New York*

---

|  |  |
|---|---|
|  | OCTOBER 2022 GRAND JURY<br>(Impaneled October 28, 2022) |
| **THE UNITED STATES OF AMERICA** | **INDICTMENT** |
| -vs- | Violations:<br>Title 18, United States Code, Sections 371, 1349 1957(a), and 2; Title 42, United States Code, Sections 1320a-7b(b)(1)(A),(b)(1)(B) and 7b(b)(2)(A), (b)(2)(B)<br>(13 Counts and 2 Forfeiture Allegations) |
| **TIMOTHY KLEIN** |  |

## INTRODUCTION

**The Grand Jury Charges That:**

At all times relevant to this Indictment:

I.   <u>Background</u>

   A.   <u>The Medicare Program</u>

1.   The Medicare Program ("Medicare") was a federal health care program providing benefits to individuals, who are 65 years or older, or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.   Medicare was subdivided into four parts which help cover specific services. Medicare "Part A" covered health services provided by hospitals. Medicare "Part B" covered medical items and services provided by physicians, medical clinics, laboratories, and other

qualified health care providers. Medicare "Part C", also known as Medicare Advantage, was another way for beneficiaries to get Medicare Part A and Part B coverage, offered by private companies. Medicare "Part D" covered or subsidized the costs of prescription drugs for Medicare beneficiaries in the United States.

3. Medicare beneficiaries obtained Part D benefits in two ways: (a) by joining a Prescription Drug Plan, which covered only prescription drugs; or (b) by joining a Medicare Advantage Plan, which covered both prescription drugs and medical services, (collectively, "Part D Plans"). Part D Plans were operated by private health insurance companies approved by Medicare. Those companies were often referred to as Medicare "Part D drug plan sponsors" ("drug plan sponsors").

4. Medicare and Medicare drug plan sponsors were Federal Health Care Programs as defined in Title 42, United States Code, Section 1320a-7b(f), and health care benefit programs as defined in Title 18, United States Code, Section 24(b).

5. A pharmacy could participate in Medicare Part D by entering into a provider agreement with a drug plan sponsor or with the Pharmacy Benefit Managers ("PBMs").

6. When a Part D beneficiary presented a prescription to a pharmacy, the pharmacy submitted a claim either directly to the drug plan sponsor or to a PBM. The drug plan sponsor or PBM determined whether the pharmacy was entitled to payment for each claim. The drug plan sponsor reimbursed the PBM for its payments to the pharmacy. Medicare, through CMS, then compensated the drug plan sponsors.

7. Physicians and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare "providers". To participate in Medicare, providers agreed to abide by the policies, procedures, rules, and regulations governing reimbursement.

B.  **Relevant Individuals and Entities**

8. The defendant, TIMOTHY KLEIN ("KLEIN"), resided in Fayetteville, New York and operated JRS Group, LLC, ("JRS") which did business in New York and elsewhere.

9. Cooperating Witness 1 ("CW-1"), a person whose identity is known to the Grand Jury, was an insurance broker in the Western District of New York who KLEIN recruited through his operation of JRS.

10. Cooperating Witness 2 ("CW-2"), a person whose identity is known to the Grand Jury, resided in North Carolina and owned and operated Advanced Telehealth Solutions, LLC. ("Advanced Telehealth"), which provided doctors for telemedicine visits arranged by KLEIN.

11. Co-Conspirator 1 ("CC-1"), a person whose identity is known to the Grand Jury, was a physician licensed to practice medicine in New York, and a contract physician with Advanced Telehealth, the company owned and operated by CW-2.

12. Co-Conspirator 2 ("CC-2"), a person whose identity is known to the Grand Jury, was an insurance broker who resided in the Western District of New York, who KLEIN recruited to contact Medicare beneficiaries and order highly reimbursable prescriptions that were medically unnecessary.

13. Co-Conspirator 3 ("CC-3"), a person whose identity is known to the Grand Jury, was an insurance broker who resided in the Western District of New York who KLEIN recruited to contact Medicare beneficiaries and order highly reimbursable prescriptions that were medically unnecessary.

14. Univera Health Care ("Univera") was a health care benefit program as defined in Title 18, United States Code, Section 24(b), with offices in the Western District of New York, which offered Medicare Part D plans.

15. Excellus Blue Cross and Blue Shield ("Excellus") was a health care benefit program as defined in Title 18, United States Code, Section 24(b), with offices in the Western District of New York, which offered Medicare Part D plans.

16. Professional Rx Pharmacy, LLC ("ProRx"), and SunRise Pharmacy were pharmacies located in the State of Nevada that filled prescriptions submitted by KLEIN through KLEIN's company, JRS Group.

### C. Telemedicine

17. Telemedicine provided a means of connecting patients to doctors by using telecommunications technology, such as video or the telephone, to interact with a patient.

## COUNT 1

**(Conspiracy to Commit Health Care Fraud)**

The Grand Jury Further Charges That:

18. Beginning in or around February 2017, and continuing to in or around December 2018, in the Western District of New York, and elsewhere, the defendant, TIMOTHY KLEIN ("KLEIN"), did knowingly and willfully combine, conspire, and agree with others, known and unknown to the Grand Jury, including unindicted co-conspirators, to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicare drug plan sponsors, and to obtain, by means of

materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, or services, in violation of Title 18, United States Code, Section 1347.

19. The purpose of the conspiracy was for the defendant, TIMOTHY KLEIN, and his co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of prescription drug claims to Medicare and Medicare drug plan sponsors for items that were medically unnecessary and procured through kickbacks and bribes; and (b) diverting fraud proceeds for their own personal use and benefit.

20. It was part of the conspiracy that KLEIN, through his company, JRS, recruited insurance brokers including CC-2 and CC-3, to contact Medicare beneficiaries and offer them prescription medicines at no cost, without regard to any actual medical necessity.

21. It was part of the conspiracy that KLEIN, through JRS, paid kickbacks and bribes to insurance brokers, including CC-2 and CC-3, for each Medicare prescription paid for through the beneficiaries' Part D plan.

22. It was part of the conspiracy that KLEIN paid CW-2 and their company, Advanced Telehealth, to provide doctors to perform telemedicine visits with the beneficiaries recruited by insurance brokers including CC-2 and CC-3. Following the telemedicine visits, the doctors would sign prescriptions for the beneficiaries, which prescriptions had been preselected and filled out by KLEIN.

23. It was part of the conspiracy that KLEIN and other co-conspirators submitted, and caused to be submitted, false and fraudulent claims to Medicare and Medicare Part D drug plan sponsors through Professional Rx Pharmacy and SunRise Pharmacy that were procured by kickbacks and bribes and for prescriptions that were medically unnecessary.

24. The defendant, TIMOTHY KLEIN, and his co-conspirators, in the Western District of New York, and elsewhere, committed and caused to be committed the following acts in furtherance of the conspiracy:

    a. In or around February 2017, KLEIN messaged CC-2 in the Western District of New York, telling CC-2 that KLEIN would continue to pay CC-2 as long as the Medicare beneficiaries CC-2 targeted and referred to KLEIN continued to get their prescriptions filled.

    b. In or around August 2017, KLEIN messaged CC-3 in the Western District of New York, advising CC-3 that KLEIN was excited to share his business opportunity with CC-3.

    c. On or about March 28, 2018, CC-3 messaged KLEIN advising that a particular beneficiary, L.C., had not received their prescribed medications.

    d. On or about May 14, 2018, CC-2 messaged KLEIN Medicare beneficiary information for J.R. along with a completed patient information form.

    e. On or about May 15, 2018, CC-1 signed a prescription ordering medically unnecessary medications for J.R.

    f. On or about May 16, 2018, ProRX submitted a claim for the prescription medications ordered for J.R.

    g. On or about August 15, 2018, CC-2 received a payment from KLEIN which represented monies paid by KLEIN for prescriptions filled for beneficiaries which CC-2 had recruited.

    h. On or about August 17, 2018, CC-3 received a payment from KLEIN which represented monies paid by KLEIN for prescriptions filled for beneficiaries which CC-3 had recruited.

      i. On or about August 30, 2018, Advanced Telehealth Solutions received a payment from KLEIN for providing doctors to have telemedicine visits with beneficiaries recruited by insurance brokers including CC-2 and CC-3.

      j. On or about September 17, 2018, KLEIN received monies from ProRx representing payments for prescriptions referred to ProRx by KLEIN and his co-conspirators.

**All in violation of Title 18, United States Code, Section 1349**.

## COUNT 2

### (Conspiracy to Pay and Receive Health Care Kickback)

### The Grand Jury Further Charges That:

25. The Introductory allegations and those contained in Count 1 of the Indictment are re-alleged and incorporated by reference as if fully set forth herein.

26. From in or about February 2017, to in or about September 2018, in the Western District of New York and elsewhere, the defendant, TIMOTHY KLEIN, did knowingly and intentionally combine, conspire, and agree with others known and unknown to the Grand Jury to:

      a. violate Title 42, United States Code, Section 1320a-7b(b)(1)(A) and (B), by knowingly and willfully soliciting and receiving renumeration, including kickbacks, bribes and rebates, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment can be made in whole and in part by a Federal health care program, and, in return for purchasing, ordering, and arranging for and recommending

purchasing and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program; and

b. violate Title 42, United States Code, Section 1320a-7b(b)(2)(A) and (B), by knowingly and willfully offering and paying renumeration, including kickbacks, bribes, and rebates, directly and indirectly, overtly and covertly, in cash and in kind, to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, and to purchase, order, and arrange for and recommend purchasing and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program.

Manner and Means

27. The manner and means by which KLEIN and his co-conspirators sought to accomplish the goal of the conspiracy included, among other things, the following:

a. KLEIN, through JRS, entered into agreements with ProRX and SunRise Pharmacy, whereby the pharmacies paid KLEIN a sum of money for each filled prescription; and

b. KLEIN, through JRS, recruited and entered into agreements with insurance brokers and/or agents, including CC-2 and CC-3, whereby he paid them money for each Medicare prescription paid through a Medicare beneficiaries' Part D plan.

Overt Acts

28.     The defendant, TIMOTHY KLEIN, and his co-conspirators, in the Western District of New York, and elsewhere, committed and caused to be committed the following overt acts in furtherance of the conspiracy:

   a. In or around February 2017, KLEIN messaged CC-2 in the Western District of New York, telling CC-2 that KLEIN would continue to pay CC-2 as long as the Medicare beneficiaries CC-2 targeted and referred to KLEIN continued to get their prescriptions filled.

   b. In or around August 2017, KLEIN messaged CC-3 in the Western District of New York, advising CC-3 that KLEIN was excited to share his business opportunity with CC-3.

   c. On or about March 28, 2018, CC-3 messaged KLEIN advising that a particular beneficiary, L.C., had not received their prescribed medications.

   d. On or about May 14, 2018, CC-2 messaged KLEIN Medicare beneficiary information for J.R. along with a completed patient information form.

   e. On or about May 15, 2018, CC-1 signed a prescription ordering medically unnecessary medications for J.R.

   f. On or about May 16, 2018, ProRX submitted a claim for the prescription medications ordered for J.R.

   g. On or about August 15, 2018, CC-2 received a payment from KLEIN which represented monies paid by KLEIN for prescriptions filled for beneficiaries which CC-2 had recruited.

h. On or about August 17, 2018, CC-3 received a payment from KLEIN which represented monies paid by KLEIN for prescriptions filled for beneficiaries which CC-3 had recruited.

i. On or about August 30, 2018, Advanced Telehealth Solutions received a payment from KLEIN for providing doctors to have telemedicine visits with beneficiaries recruited by insurance brokers including CC-2 and CC-3.

j. On or about September 17, 2018, KLEIN received monies from ProRx representing payments for prescriptions referred to ProRx by KLEIN and his co-conspirators.

**All in violation of Title 18, United States Code, Section 371.**

## COUNTS 3-7

**(Soliciting and Receiving of Health Care Kickbacks)**

**The Grand Jury Further Charges That:**

29.  The Introductory allegations and those contained in Counts 1 and 2 of this Indictment are alleged and incorporated by reference as though fully set forth herein.

30.  On or about the dates set forth below, in the Western District of New York, and elsewhere, the defendant, TIMOTHY KLEIN, did knowingly and willfully solicit and receive remuneration, including kickbacks, bribes, and rebates, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment can be made in whole and in part by a Federal health care program, and in return for purchasing, ordering, and arranging for and recommending purchasing and ordering any good, facility,

service, and item for which payment may be made in whole and in part under a Federal health care program, as follows:

| COUNT | CHECK DATE | PAYEE | AMOUNT |
|---|---|---|---|
| 3 | 8/15/2018 | JRS Group, LLC | $63,182.05 |
| 4 | 9/17/2018 | JRS Group, LLC | $95,479.05 |
| 5 | 10/15/2018 | JRS Group, LLC | $68,984.23 |
| 6 | 11/15/2018 | JRS Group, LLC | $32,321.14 |
| 7 | 12/14/2018 | JRS Group, LLC | $22,321.30 |

**All in violation of Title 42, United States Code, Sections 1320a-7b(b)(1)(A) and(B), and Title 18, United States Code, Section 2.**

### COUNTS 8-11

**(Knowingly and Willingly Offering and Paying Health Care Kickbacks)**

**The Grand Jury Further Charges That:**

31. The Introductory allegations and those contained in Counts 1 through 7 of this Indictment are alleged and incorporated by reference as though fully set forth herein.

32. On or about the dates set forth below, in the Western District of New York, and elsewhere, the defendant, TIMOTHY KLEIN, did knowingly and willfully offering and paying remuneration, including kickbacks, bribes, and rebates, directly and indirectly, overtly and covertly, in cash and in kind, to any person to induce such person to refer an individual for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal Health Care Program, and to purchase, order, and arrange for and recommend purchasing and ordering any good, facility, service, and item

11

for which payment may be made in whole and in part under a Federal Health Care Program, as follows:

| COUNT | DATE | PAYOR | PAYEE |
|---|---|---|---|
| 8 | 07/13/2018 | JRS Group LLC | CC-2 |
| 9 | 07/16/2018 | JRS Group LLC | CC-3 |
| 10 | 08/15/2018 | JRS Group LLC | CC-3 |
| 11 | 08/15/2018 | JRS Group LLC | CC-2 |

**All in violation of Title 42, United States Code, Sections 1320a7b(b)(2)(A) and (B), and Title 18, United States Code, Section 2.**

## COUNTS 12-13

### (Money Laundering)

### The Grand Jury Further Charges That:

33. The Introductory allegations and those contained in Counts 1 through 11 are realleged and incorporated by reference as though fully set forth herein.

34. On or about the dates set forth below, in the Western District of New York, and elsewhere, the defendant, TIMOTHY KLEIN, did knowingly engage in monetary transactions, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, transfer and exchange of funds and monetary instruments by, through and to financial institutions engaged in, and the activities of which affected, interstate and foreign commerce, such property having been derived from specified unlawful activity, that is, conspiracy to commit health care fraud in violation of Title 18, United States Code, Section 1349, conspiracy to pay and receive health care kickbacks in violation of Title 18, United States Code, Section 371, and soliciting and receiving health care kickbacks in violation of Title 42, United States Code, Sections 1320a-7b(b)(1) and (2), and

12

knowing that the funds and monetary instruments involved in the transactions constituted, and were derived from, proceeds obtained from a criminal offense:

| COUNT | DATE OF TRANSACTION | AMOUNT | DESCRIPTION OF TRANSACTION |
|---|---|---|---|
| 12 | July 17, 2018 | $60,000 | Check 1437 in the amount of $60,000 issued from JRS Group LLC to Timothy Klein, and deposited into JPMorgan Chase Bank Account 3687 |
| 13 | August 22, 2018 | $60,000 | Check 1458 in the amount of $60,000 issued from JRS Group LLC to Timothy Klein, and deposited into JPMorgan Chase Bank Account 3687 |

**All in violation of Title 18, United States Code, Section 1957(a).**

**FIRST FORFEITURE ALLEGATION**

**(Proceeds Forfeiture)**

The Grand Jury Alleges That:

Upon conviction of one or more of the offenses set forth in Counts 1 through 11 of this Indictment, the defendant, TIMOTHY KLEIN, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or

personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, the following:

### CURRENCY

I. The approximate sum of **$218,915.72** United States currency that was received by the Federal Bureau of Investigation on or about November 14, 2018, and July 12, 2019, which sum of money represents a portion of the proceeds obtained as a result of the offenses for which the defendant, TIMOTHY KLEIN is charged in Counts 1 through11.

### MONETARY AMOUNT

II. The approximate sum of **$213,872.29** United States currency, which sum of money represents a portion of the proceeds obtained as a result of the offenses for which the defendant, TIMOTHY KLEIN is charged in Counts 1 through11. In the event that the above sum is not available, then a money judgment for the same amount will be entered against the defendant.

If any of the property described above, as a result of any act or omission of the defendant:

1. cannot be located upon the exercise of due diligence;
2. has been transferred or sold to, or deposited with, a third person;
3. has been placed beyond the jurisdiction of the Court;
4. has been substantially diminished in value; or
5. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), of any other property of the defendant up to the value of the above forfeitable property, including but not limited to:

### SUBSTITUTE ASSET:

III. The approximate sum of **$19,037.58** United States currency received by the Federal Bureau of Investigation on or about November 14, 2018, and July 12, 2019.

**All pursuant to Title 18, United States Code, Section 981(a)(1)(C); Title 18, United States Code, Section 982(a)(7); Title 21, United States Code, Section 853(p); and Title 28, United States Code, Section 2461(c).**

## SECOND FORFEITURE ALLEGATION

**(Money Laundering Forfeiture)**

**The Grand Jury Further Alleges That:**

Upon conviction of one or more of the offenses set forth in Counts 12 and 13 of this Indictment, the defendant, TIMOTHY KLEIN, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), the following property:

    **A.**    **PROPERTY**

All right, title and interest in any and all property involved in a violation of Title 18, United States Code, Section 1957 for which the defendant is convicted, and all property traceable to such property, including the following: (1) all money or other property that was the subject of each transaction, transmission, or transfer in violation of Section 1957, or any money or property traceable to such money or property; (2) all commissions, fees and other property constituting proceeds obtained as a result of said violations; and (3) any property, real or personal, involved in such offenses, or any property traceable to such property.

    **B.**    **MONETARY AMOUNT**

The sum of approximately **$120,000** United States currency, which sum of money is equal to the total amount of money involved in the money laundering offenses for which the defendant, TIMOTHY KLEIN is charged. In the event that the above sum is not available, then a money judgment for the same amount will be entered against the defendant.

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant

    1.    cannot be located upon the exercise of due diligence;
    2.    has been transferred or sold to, or deposited with, a third person;
    3.    has been placed beyond the jurisdiction of the Court;

4. has been substantially diminished in value; or
5. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), of any other property of the defendant up to the value of the above forfeitable property, including but not limited to:

i. The approximate sum of **$19,037.58** United States currency received by the Federal Bureau of Investigation on or about November 14, 2018, and July 12, 2019.

**All pursuant to Title 18, United States Code, Section 982(a)(1);and Title 21, United States Code, Section 853(p).**

DATED: Buffalo, New York, July 11, 2023.

TRINI E. ROSS
United States Attorney

BY: S/MICHAEL DIGIACOMO
MICHAEL DIGIACOMO
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716/843-5885
michael.digiacomo@usdoj.gov

A TRUE BILL:

S/FOREPERSON
FOREPERSON